682 So.2d 261 (1996)
STATE of Louisiana
v.
Randy TUCKER.
No. 95-KA-0030.
Court of Appeal of Louisiana, Fourth Circuit.
September 18, 1996.
Rehearing Denied November 22, 1996.
*262 Harry F. Connick, District Attorney, Val M. Solino, Assistant District Attorney, New Orleans, for Appellee.
Archie B. Creech, Orleans Indigent Defender Program, New Orleans, for Appellant.
Before BYRNES, CIACCIO and LOBRANO, JJ.
LOBRANO, Judge.
Defendant, Randy Tucker, was charged by bill of information with two counts of armed robbery, violations of Louisiana Revised Statute 14:64.
Defendant was arraigned on March 27, 1979 and pled not guilty to both counts. A hearing on defendant's motion to suppress identification was heard April 9, 1979. The motion was denied. Trial was held October 15, 1979. A twelve member jury found defendant guilty as charged on both counts. On October 26, 1979, defendant was adjudicated a multiple offender pursuant to Louisiana Revised Statute 15:529.1. Accordingly, defendant was sentenced to serve sixty years on each count to run concurrently. Defendant's conviction and sentences were subsequently affirmed after a review limited to errors patent.[1] On November 5, 1993, in response to defendant's application for post conviction relief, the Supreme Court ordered that defendant be resentenced on one count because defendant was improperly sentenced as a multiple offender.[2] On June 2,1994, the trial court resentenced defendant on count one to sixty years at hard labor without the benefit of probation, parole or suspension of sentence. On count two, the court sentenced defendant pursuant to Louisiana Revised Statute 15:529.1 to sixty years at hard labor without the benefit of probation, parole or suspension of sentence. Both sentences to run concurrently. The Court granted defendant an appeal.

*263 FACTS:

On February 26, 1979, at approximately 9:00 p.m., Michael and Andrea DeFilippo went to the A.T.M. machine at the Bank of New Orleans on the corner of Jefferson Avenue and Magazine Street. As the couple walked back to their car, Mr. DeFilippo noticed two black males. One of the men said "This is it". The men approached the couple and ordered Mrs. DeFilippo to get into the back seat. Defendant was holding a gun inside a plastic bag. Defendant then got into the front seat with Mr. DeFilippo. The second assailant, a juvenile later identified as Charles Daniels, got into the back seat with Mrs. DeFilippo. Defendant then passed the plastic bag to Daniels who showed Mrs. DeFilippo the gun. The couple was then ordered to turn over their purse and wallet to defendant. Mr. DeFilippo was then ordered to drive to Jefferson Avenue and Constance Street where defendant got out of the car and got into his own car. Mrs. DeFilippo was then allowed to get into the front seat of the couple's car. Daniels remained in the back seat. Mr. DeFilippo was then ordered to follow defendant to Audubon Park. Defendant then ordered the couple to get out of their car. Defendant retrieved the gun from Daniels, took the couple's car keys and ordered them to walk into the park. As the couple began walking, headlights from another vehicle appeared. Defendant then returned to this vehicle and left.
On February 28, 1979, defendant and Daniels were arrested by State Trooper James Farris and Phillip Waites. At the time of their arrest, a gun was retrieved. Neither Trooper was able to state which of the two perpetrators threw the gun down on the ground. Property belonging to the DeFilippos was found on defendant's person and in his car. In a photographic line-up on March 2, 1979, Mr. DeFilippo identified defendant's photo. Mrs. DeFilippo chose two photos, one of which was defendant's and one of another man. In a subsequent physical line-up on March 20, 1979, both victims identified defendant as the man who robbed them. In court identifications of defendant and Daniels were made by both victims.
Defendant appeals his conviction and sentences asserting the following assignments of error:
1) Defendant is being denied his right to an appeal based upon a complete trial record;
2) Defendant was denied his right to effective assistance of counsel;
3) Defendant's sentence is unconstitutionally excessive;
4) The trial court erred in adjudicating defendant a multiple offender.

ASSIGNMENT OF ERROR 1:

Defendant contends that he is being denied his right to an appeal based upon a complete record. Defendant's argument revolves around two motions to supplement the record. Defendant sought to supplement the record with the trial court's jury instructions and the photographs used in the photographic line-up. The photographs are no longer available as they have been destroyed due to the age of the record. Similarly, this Court received certification from the trial court that the transcript of the jury instructions could not be located.
The Louisiana State Constitution provides that "[n]o person shall be subjected to imprisonment... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based." La. Const. Art. I, Sec. 19 (West 1977). In addition, Louisiana Code of Criminal Procedure Article 843 requires that all of the proceedings in a felony case be recorded.[3] However, where the missing portions of the trial record are not evidentiary, their absence does not compromise the defendant's constitutional right to a judicial review of all evidence. State v. Thomas, 92-1428 pp. 2-3 (La.App. 4th Cir. 5/26/94), 637 So.2d 1272, 1274, writ denied, 94-1725 (La.11/18/94), 646 *264 So.2d 376, cert. denied, Thomas v. Louisiana, ___ U.S. ___, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995); State v. Rodriguez, 93-0461 (La.App. 4th Cir. 3/29/94), 635 So.2d 391.
In the instant case, the full transcript of the evidentiary portion of the trial was made part of the appellate record. Thus, the absence of the jury instruction transcript does not deny defendant full appellate review.
The photographs used in the pre-trial photographic line-up were not introduced at trial. Only the photo of the physical line-up was introduced.
The transcript of the October 12, 1979 motion hearing shows that Mrs. DeFilippo's inability to identify defendant in the photographic line-up was brought before the trial court. This fact was also brought out before the jury at defendant's trial.
Defendant's argument with respect to the physical line-up stems from questions posed by defense counsel to Detective Ronald Richardson during the motion hearing of October 12, 1979. Counsel asked Detective Ronald Richardson "couldn't you find anyone as dark as Mr. Tucker to put in there with him?" Detective Richardson replied, "Yes, They were all the same color to me." Wherein, defense counsel asked Detective Richardson if all the men in the line-up looked to be same color. Detective Richardson replied, "Yes, sir, except for this one." Detective Richardson was not asked if the man who looked different was defendant. In addition, at trial, defense counsel, prior to Detective Richardson's testimony with regard to the physical line-up, stipulated that all procedural safeguards, except for the fact that there was no attorney present to represent Mr. Tucker, were followed.
Thus, we find that nothing in the record discloses that the physical line-up was in anyway unduly suggestive.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 2:

Defendant asserts that appellate counsel in the original appeal was ineffective for failing to review the motion to suppress identification transcripts and the photographs used in the photographic line-up. Specifically, defendant points to the fact that Mrs. DeFilippo identified someone other than defendant during the photographic line-up on March 2, 1979.[4] Defendant argues that because this failure to identify him as the robber could have constituted reversible error, appellate counsel was ineffective for failing to review the transcript and photographs before submitting an errors patent brief.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court, where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729, 737 (La.1984); State v. Johnson, 557 So.2d 1030, 1033 (La. App. 4th Cir.1990). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. Id., State v. Seiss, 428 So.2d 444, 448 (La.1983).
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court enunciated the two part test to be used in assessing a claim of ineffective assistance of counsel. Defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Both showings must be made to establish that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064.
*265 Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry this burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome". Strickland, supra at 693, 104 S.Ct. at 2068 (emphasis added).
We find the record is sufficient to address defendant's claims of ineffective assistance of counsel.
Defendant fails to meet his burden of proof pursuant to Strickland. A review of the motion to suppress transcripts show no reversible error.[5]
At the April 9, 1979 hearing, Mrs. DeFilippo testified that she did identify one of the subjects in the photographic line-up as her assailant. She was not asked whether the subject was defendant. At the October 12, 1979 hearing, Officer Dorion testified that the subject Mrs. DeFilippo identified in the photographic line-up was not defendant.
At the physical line-up held on March 20, 1979, Mrs. DeFilippo positively identified defendant as the robber. Mrs. DeFilippo also positively identified defendant at trial:
Q. I would like to direct your attention to March the 20th, of 1979; did you have occasion to attend a lineup on that date?
A. Yes.
Q. Did you identify anybody at that lineup?
A. Yes.
Q. Do you see anybody present in court that you identified at that lineup?
A. Yes.
Q. Would you point them out please?
A. Randy Tucker.
At, trial, the jury was also made aware of the fact that Mrs. DeFilippo failed to identify defendant during the photographic line-up:
Q. Okay, so the police showed you six photographs; and you identified one as the perpetrator. Did you identify Randy Tucker at that time?
A. No, I did not.
Q. You didn't. Was there a picture of Randy Tucker among those pictures they gave you?
A. Yes.
Q. So you saw Randy Tucker's picture and another picture, you identified the other picture first, but when you got to the lineup you identified Randy Tucker, is that true?
A. Yes.
Thus, the record discloses that the jury was well aware of the discrepancy in Mrs. DeFilippo's initial and subsequent identification of the man that robbed her. The reliability of her subsequent positive identification of defendant at the physical line-up and at trial was for the jury to decide.
Even assuming arguendo, that Mrs. DeFilippo had never identified defendant, Mr. DeFilippo did positively identify defendant at trial and during both line-ups. Mr. DeFilippo had a better opportunity to view defendant because he was sitting with him in the front seat of the car. Charles Daniels was sitting in the back seat with Mrs. DeFilippo.
At trial, Daniels testified as to his own and defendant's involvement in the robbery. Property belonging to the victims was recovered from defendant and from his car.
Thus, given the record before us, we conclude that defendant's claim of ineffective assistance of counsel is without merit. Even if appellate counsel had raised these issues, defendant's convictions would not have been reversed for the reasons given.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 3:
Defendant asserts that the sentence imposed in 1994 is unconstitutionally excessive in light of the extensive documentary evidence submitted by defendant to show his rehabilitation while in prison. He argues *266 that, given his accomplishments while in prison, and the fact that the offenses were part of the same incident, sixty years is unconstitutionally excessive.
We first note that the Louisiana Supreme Court never vacated defendant's sentences nor did the Court order that defendant be resentenced on both counts. Instead, the Court remanded the case and ordered the district court to vacate "one of the two sentences subject to La.R.S. 15:529.1 and resentence" defendant.[6] Pursuant to this order, defendant was not entitled to have his sentence of sixty years as a multiple offender reduced. The trial court, therefore, was not required to review any of the documents which defendant submitted. Furthermore, the sentences imposed were ordered to run concurrently as they were part of the same incident.
Defendant's contention that the robbery did not result in injury to the DeFilippos is correct. However, defendant fails to note that he had been convicted of perpetrating another armed robbery just two days after the instant offense. This armed robbery occurred in the same bank parking lot. The victim, like the DeFilippos, was robbed at gunpoint and ordered to drive to Audubon Park. Charles Daniels also participated in this robbery.[7]
It is clear that defendant and Daniels conspired to engage in more than one robbery which involved forcing the victims to drive at gunpoint to Audubon Park. The DeFilippos were ordered to walk into the park at gunpoint. Mrs. DeFilippo testified that she was "really scared". Certainly this action heightened the victim's fear of death or great bodily harm.
Thus, considering the facts of this case, we find the reimposition of the sixty year sentence was not unconstitutionally excessive.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 4:
Defendant asserts the trial court erred in adjudicating him a multiple offender. Specifically, he contends that the State failed to prove that the five year cleansing period had not elapsed.
The record discloses that the predicate conviction used in the multiple offender proceeding was a conviction for simple burglary. According to the multiple bill, defendant entered a plea of guilty to the prior charge on January 26, 1977 and was sentenced to serve two years at hard labor. The instant offenses occurred on February 26, 1979, slightly more than two years later.
In a multiple offender proceeding, the State has the burden of establishing that five years have not elapsed between the defendant's release from custody and the new offense. State v. Tropez, 546 So.2d 1376 (La.App. 4th Cir.1989). However, where less than five years have elapsed between convictions, it is not necessary for the State to prove discharge dates. State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977).
The record clearly shows that less than five years elapsed between the defendant's convictions. Therefore, the State was not required to provide proof of discharge from the prior offense.
Defendant also makes general assertions that no "pen pack" was admitted; that insufficient evidence was produced to show that he was adequately advised of his rights when he pled guilty in the predicate case; and, that the testimony of the fingerprint expert was insufficient.
*267 A review of the multiple offender transcript shows that Officer William Sabel matched defendant's fingerprints taken in open court with those on the back of an arrest register which contained the name of Randy Tucker as arrestee; the charge was simple burglary of 1805 St. Thomas Street on December 22, 1976. The State introduced a certified copy of a guilty plea by Randy Tucker for the crime of simple burglary of 1805 St. Thomas Street committed on December 22, 1976. We find this evidence was sufficient to establish defendant's identity. State v. Walters, 591 So.2d 1352 (La.App. 4th Cir.1991).
Defendant contends that the guilty plea form was insufficient to show he was advised of his rights. Defendant made this same argument in his appeal from his other armed robbery conviction in which the same predicate conviction was used. State v. Tucker, 405 So.2d 506, 508-509. In that case, the Supreme Court found that the signed guilty form submitted in connection with the minute entry was sufficient.
This assignment of error is without merit.
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] State v. Tucker, 399 So.2d 1177 (La.1981).
[2] State ex rel. Tucker v. State, 629 So.2d 361 (La.1993).
[3] La.C.Cr.Pro. Art. 843 provides:

In felony cases, and on motion of the court, the state, or the defendant in misdemeanor cases tried in a district, parish, or city court, the clerk of court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.
[4] Officer Barbara Dorion testified at the October 12, 1979 suppression hearing that Mrs. DeFilippo was shown six photographs, one of which was a photograph of defendant. She stated that Mrs. DeFilippo initially chose two of the photos but was unsure which subject was her assailant. She eventually chose the subject shown in photo number 5. Defendant's photo was photo number 3.
[5] The motion to suppress identification hearing began April 9, 1979. The hearing was continued to and concluded on October 12, 1979.
[6] The Supreme Court stated:

The record demonstrates that, in Case No. 269-183, relator was sentenced as a second felony offender as to each conviction of armed robbery. Having been convicted on the same day and of crimes arising from a single criminal episode, relator was exposed to a multiple offender adjudication on only one of his two convictions in this case. State ex rel Randy Tucker, supra, note 2.
[7] See, State v. Tucker, 405 So.2d 506 (La.1981). In this case, defendant was also sentenced to sixty years pursuant to a multiple bill. The same trial court ordered that all the sentences run concurrently even though the second sentence normally would run consecutively as a separate offense. La.C.Cr.Pro. article 883.