810 So.2d 1127 (2002)
STATE of Louisiana
v.
Johnell PAYTON.
No. 2000-K-2899.
Supreme Court of Louisiana.
March 15, 2002.
Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Nicole B. Barron, Scott D. Peebles, Counsel for Applicant.
Christopher A. Aberle, Mandeville, Counsel for Respondent.
JOHNSON, Justice.[*]
We granted the State's writ application to determine whether the court of appeal erred in finding the State failed to prove beyond a reasonable doubt that the defendant is a third-felony offender, in violation *1128 of the Louisiana Habitual Offender Act. After carefully reviewing the record and well-established Louisiana jurisprudence, we find the court of appeal erred in its ruling. We therefore reverse and remand for sentencing as a multiple offender.

FACTS AND PROCEDURAL HISTORY
Johnell Payton ("defendant") was charged by the District Attorney for the Parish of Orleans ("the State") with dual bills of information. The indictments alleged the defendant was guilty of: (1) two counts of armed robbery, a violation of LSA-R.S. 14:64 and (2) one count of being a felon in possession of a firearm, a violation of LSA-R.S. 14:95.1.
At his arraignment, defendant pled not guilty. After trial by a twelve-member jury in the Criminal District Court for the Parish of Orleans, defendant was found guilty of first degree robbery as to count one of the indictment and guilty of armed robbery as to count two.[1] Accordingly, the court sentenced him to twenty years at hard labor, with credit for time served on count one, and twenty-five years at hard labor, with credit served on count two. The sentences were to run concurrently.
After the trial court imposed its sentence, the State filed a multiple bill of information charging the defendant as a third-felony offender, in violation of Louisiana's Habitual Offender Act.[2] Following a hearing on the matter, the court denied the multiple bill, finding the State had not met its burden of proving the defendant's guilt beyond a reasonable doubt in one of the specified offenses. At the multiple bill hearing, the trial judge indicated:
The [c]ourt finds that the State has failed to prove beyond a reasonable doubt that the defendant is a triple offender, particularly in light of the 1995 [conviction] for which there are no fingerprints on the Plea of Guilty Form to confirm that was, in fact, Johnell Payton. Therefore, the multiple-bill hearing is dismissed in this matter, and the original sentence stands as it is.
Transcript of Multiple Bill Hearing (8/24/98) at 30.
In an opinion not designated for publication, the Fourth Circuit Court of Appeal affirmed the defendant's conviction and sentence. The circuit court also affirmed the trial court's ruling that the State failed to meet its burden of proof concerning one of the defendant's prior convictions, but found the trial court acted without authority because the dismissal was not supported by any Code of Criminal Procedure article or statute. Therefore, it reversed the trial court's dismissal of the multiple bill. The case was remanded to the trial court for determination of whether the defendant was a third-felony offender.
We granted the State's subsequent writ application to evaluate the court of appeal's ruling. 00-K-2899 (La.9/21/01), 797 So.2d 54. As part of our evaluation, we find it appropriate to first review the factual allegations concerning both counts of the bill of information before discussing the relevant jurisprudence.

Count One
At trial, New Orleans police officer Melvin Labeaud testified that he was working a paid detail on December 23, 1997, at the Walgreen's store on Chef Menteur Highway *1129 in New Orleans East. At approximately 7:15 p.m., Ms. Martha Mitchell informed Officer Labeaud that she had been robbed in the store's parking lot by a black male wearing a black and orange jacket and dark pants. As he exited the store, Labeaud saw the suspect running from the store's parking lot. Labeaud gave chase on foot. He searched the area, with the assistance of other officers who were notified by a Walgreen's employee. However, they were unsuccessful in finding the suspect.
Ms. Mitchell testified that as she exited her car in the store's parking lot, the defendant brandished a firearm and told her to "give it up." She indicated that after handing him her purse, he turned and fled on foot as she ran into Walgreen's to seek assistance. She indicated that she observed the defendant's face for approximately twenty to thirty seconds, in good light, in the parking lot. A short time later, she identified the defendant from a photo lineup as her assailant.

Count Two
Gwendolyn Mackey, a security guard at the Winn Dixie Store located at 500 North Carrollton Avenue in New Orleans, testified that on December 26, 1997 she received word that a customer was robbed at gunpoint in the store's parking lot. As Mackey exited the store to the parking lot, she immediately noticed the victim screaming and pointing to a man walking out of the parking lot. The victim, Sister Francis Regis (Merianne Feise), told Mackey the robber wore army fatigues, a white shirt, and boots. As Mackey followed the suspect in her car, her partner followed him on foot. The officers cornered the suspect and took him back to the store. Upon seeing the suspect, the victim identified him as the robber. The officers retraced the suspect's path and found the victim's purse beside a tree approximately one-half block from the store. After the suspect was identified, police officers inspected his car, which he abandoned prior to walking out of the parking lot. The police identified the car as stolen, found a handgun on the front passenger seat, and placed the suspect under arrest.
Sister Francis Regis testified that as she opened her car door, a black male placed a gun to her head and demanded her purse. She indicated that after handing him the purse, he walked to his car and she screamed for help. As a crowd gathered, the suspect exited his car and left on foot. She testified that she described her assailant's physical characteristics and clothing to the store's security guards. Approximately ten minutes later, the officers returned the suspect to the store and she identified him as the defendant.

LAW AND ANALYSIS
The State alleges that both the district court and court of appeal erred in finding the evidence presented was insufficient to prove the defendant was a third-felony offender. The State argues the Fourth Circuit failed to follow its own jurisprudence as well as the jurisprudence of this Court. Specifically, the State argues the court of appeal ignored its holding in State v. Henry, 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322 and our holding in State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339. In addressing the State's allegations, we shall discuss each case in turn.
In Henry, the defendant was found guilty of the October, 1994 simple burglary of an inhabited dwelling. After conviction, the State charged defendant as a fourth-offender. However, defendant contended there were no grounds for such because of insufficient proof of his identity in a 1991 simple escape charge. In rebuttal, the State introduced a certified copy of the 1991 conviction with the same defendant's Bureau of Identification number, physical *1130 description, birth date, and social security number. See Henry, 709 So.2d at 326. Therefore, the court of appeal found there was sufficient evidence to maintain the district court's four-felony conviction.
In Lindsey, an opinion of consolidated cases, two defendants were found guilty of simple robbery and purse snatching, respectively. The State tried both defendants under the Habitual Offender Act and the court sentenced them accordingly. On appeal, when one defendant challenged the sufficiency of his multiple-offender status, this Court noted that the fingerprints on the arrest register matched the defendant's prints, taken in court, before the multiple bill hearing. A police officer at the hearing also testified that the defendant's bill of information packet, containing docket masters, plea forms, and minute entries, contained the same defendant's birth date, social security number, and Bureau of Identification number. We therefore affirmed the lower court's sentence, noting the State had carried its burden of proof by competent evidence. See Lindsey, 770 So.2d at 344-45.
In State v. Chaney, 423 So.2d 1092 (La. 1982), a factually similar case, one of the defendants alleged the State presented insufficient evidence to establish his status as a multiple offender. After being sentenced on a charge from one crime, the State filed a multiple bill against the defendant, alleging his conviction of a prior offense. As an expert witness, the State called a fingerprint examiner from the Department of Corrections. She testified that the defendant's criminal records showed an arrest card with information, including name and date of birth, which matched a fingerprint card. Therefore, in affirming the defendant's convictions, this Court held "[i]n order to prove the defendant is a habitual offender, the State need only establish by competent evidence that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony." Id. at 1103 (citations omitted).
Furthermore, in State v. Westbrook, 392 So.2d 1043 (La.1980), a case where defendant was convicted of a second offense of driving while intoxicated, defendant complained of an insufficient connexity to prove he was actually the prior offender. In affirming his multiple-felony conviction, this Court held "the driver's license number, sex, race, and birth date all identified the prior offender with defendant. The State [therefore] carried its burden of proving that this defendant is the Westbrook previously convicted...." Id. at 1045. See also State v. Lee, 97-1035 (La. App. 5 Cir. 2/11/98), 709 So.2d 226, 228-29 (affirming defendant's conviction as a multiple offender even though the bill of information did not contain defendant's fingerprints); State v. Hawthorne, 580 So.2d 1131, 1132-33 (La.App. 4 Cr.1991) (affirming defendant's multiple offense conviction because of defendant's name and date of birth on certified arrest registers).
In evaluating the merit of the State's appeal, we begin our analysis by reviewing jurisprudence that interprets the Louisiana Habitual Offender Act. "To obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony." State v. Neville, 96-0137 (La. App. 4 Cir. 5/21/97), 695 So.2d 534, 538-39, writ denied, 97-1637 (La.12/12/97), 704 So.2d 1180 (citations omitted). In attempting to do so, the State may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical drivers license number, sex, race and date of birth. See, e.g., State v. *1131 Westbrook, supra; see also State v. Curtis, 338 So.2d 662, 664 (La.1976).
As to defendant's first conviction, for First Degree Robbery, the district court found a positive match of the defendant's fingerprints. At the multiple bill hearing, the State introduced the testimony of Officer Raymond Loosemore of the New Orleans Police Department, as an expert in the taking, examination, comparison and analysis of fingerprints. As to the defendant's first felony conviction, Loosemore identified State's Exhibit Two as the certified copy of the arrest register, with fingerprints, pertaining to the defendant and dated 2/25/93. On direct examination by the assistant district attorney, Loosemore indicated:
Q: And are you the custodian of that record?
A: Yes, sir, I am one of them.
Q: Any fingerprints on that record?
A: On the rear of the documents, yes sir, they do.
Q: And did you compare those fingerprints with the fingerprints on State's Exhibit One?
A: Yes, sir, I did. I compared those with the fingerprints of the subject I took today.
Q: And what were the results?
A: It was a positive match. The fingerprints come from one and the same subject.
Transcript of Multiple Bill Hearing (8/24/98) at 6.
As to defendant's second conviction, for Attempted Theft of an Automobile, Officer Loosemore identified State's Exhibit Four as a certified copy of the defendant's arrest register dated 7/7/95. His comparison of the fingerprints on the arrest register with the fingerprints on State's Exhibit One yielded a positive match. However, upon examining State's Exhibit Five, the documents including the bill of information, arrest register, and guilty plea, Loosemore testified there were no fingerprints on any of the documents other than the arrest register. On cross examination by defense counsel, Loosemore testified:
Q: With respect to what I'm calling the second item, which was marked for identification purposes as Exhibit Five, you said that you were not able to get a satisfactory match with respect to Johnell Payton; correct?
A: The fingerprints on the court proceeding documents didn't match the man who I've fingerprinted here today.
Q: There were no fingerprints for Johnell Payton on that document, correct; only for Mr. Henry Montgomery?
A: Mr. Montgomery.
Q: So, with respect to the entry of the plea of the papers, there's nothing as to the 1995 charge where you had Johnell Payton's fingerprints as the individual that was fingerprinted after they entered a plea of guilty; correct?
A: No fingerprints; only the arrest register.
Q: All right. Now, so you can't say with any degree of certainty that the individual that presented himself in court on the day and entered a plea of guilty was in fact the individual who sits here today because you do not have fingerprints. Is that fair to say?
* * *
A: That's correct.
Q: All right. And there's no way for you to say with any degree of certainty whether the individual that sits here is, in fact, the individual that entered a plea of guilty on that day. Correct?
A: Not by the court papers alone.
*1132 Transcript of Multiple Bill Hearing (8/24/98) at 11-12.
Although defense counsel focused on the lack of defendant's fingerprints on the bill of information and guilty plea form, this Court has held a conviction may be maintained by other competent evidence. "This Court has repeatedly held that [the Habitual Offender Act] does not require the State to use a specific type of evidence to carry its burden at an habitual offender hearing and that prior convictions may be proved by any competent evidence." State v. Lindsey, 770 So.2d at 344 n. 3 (citations omitted) (emphasis added). As such, we are unpersuaded by defense counsel's argument.
Furthermore, Officer Loosemore's testimony on re-direct examination indicated there was competent evidence to prove the defendant was the same individual guilty of the 1995 conviction.
Q: [T]here are fingerprints on the arrest register?
A: That's correct, on the rear of the documents.
Q: And whose fingerprints are those?
A: Those fingerprints match the subject who I fingerprinted here today, one Johnell Payton.
Q: On that arrest register, whose name is listed?
A: On the arrest register, is one Johnell Payton, date of birth, 1/7/76.
Q: And what date of arrest is on there?
A: 7/7 of '95.
Q: And what item number appears on that register?
A: The police item number is G12895 of '95.
Q: And what is the crime listed?
A: Crime listed is attempt[ed] theft of an auto/$7,000.
Q: And I ask you to compare the arrest register in State's Exhibit Four with the arrest register in State's Exhibit Five.
A: The arrest register in State's Exhibit Number Four and at the rear of State's Exhibit Number Fivethe arrest register and booking sheet are one in the same; the item number, one in the same; date of arrest, one in the same; and the subject who was arrested and booked is one in the same.
Q: So all the information on the arrest register in Exhibit Four is exactly the same Exhibit Five?
A: At the rear of the document, yes, sir.
Transcript of Multiple Bill Hearing (8/24/98) at 13-14 (emphasis added). Therefore, in light of our well-settled jurisprudence and the forgoing testimony, we find the State did present competent evidence to prove defendant's identity and that he was the same person convicted of the prior felony offenses.
Even in the absence of fingerprints or some documents relating to the 1995 conviction, there was competent evidence to establish the defendant's third-felony status.

DECREE
For the foregoing reasons, we REVERSE the court of appeal and REMAND for sentencing in accordance with the Louisiana Habitual Offender Act.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.
[1] The disposition of the felon in possession of a firearm charge is not evident from the record.
[2] See LSA-R.S. 15:529.1(D)(1)(b) (maintaining that the district attorney has the burden of proving, beyond a reasonable doubt, any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof).