STATE OF LOUISIANA
v.
JOSEPH W. NEATHERY.
No. 2007 KA 1226.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
DOUG MOREAU, District Attorney, CLIFF WILKERSON, Assistant District Attorney Attorneys for State of Louisiana.
KATHERINE M. FRANKS, Louisiana Appellate Project, Attorney for Defendant-Appellant, Joseph W. Neathery.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
This case is before this court again following a remand for correction of sentences and other matters. See State v. Neathery, 05-0026 (La. App. 1st Cir. 11/4/05), 913 So.2d 893 (unpublished). Following is the procedural background as discussed in our previous decision.
The defendant, Joseph W. Neathery, was charged by bill of information with two counts of aggravated burglary (counts one and two), violations of LSA-R.S. 14:60, and two counts of armed robbery (counts three and four), violations of LSA-R.S. 14:64. The defendant pled not guilty to all charges. The defendant waived his right to a jury trial and, following a bench trial, the defendant was found guilty as charged on all four counts. As to counts one and two, the trial court sentenced the defendant to five years of imprisonment at hard labor. As to counts three and four, the trial court sentenced the defendant to ten years of imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently. The state then filed a habitual offender bill of information, and the defendant was adjudicated a second felony habitual offender. As to counts one and two, the trial court sentenced the defendant to fifteen years of imprisonment at hard labor, to be served concurrently. As to counts three and four, the trial court sentenced the defendant to fifty years of imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence, to be served concurrently with one another and with the sentences imposed on counts one and two.
The defendant appealed his convictions and sentences. On appeal, this court found that the trial court improperly enhanced all four sentences, and that convictions for both aggravated burglary offenses was a double jeopardy violation. All original sentences, all four enhanced sentences, and the habitual offender adjudication were vacated, and the case was remanded with instructions to the prosecution and the trial court. Neathery, 05-0026 at 8.
Following the remand, the state dismissed one count of aggravated burglary, namely, count two, and the trial court re-imposed the original sentences on each of the remaining three counts. Subsequently, the trial court held a hearing on a habitual offender bill of information and, at the conclusion of that hearing, adjudicated the defendant to be a second felony habitual offender with respect to the first count charging the defendant with armed robbery. The trial court then sentenced the defendant to fifty years of imprisonment at hard labor without benefit of probation, parole, or suspension of sentence for the first armed robbery count. The previously reimposed sentences of five years of imprisonment for aggravated burglary and ten years of imprisonment for the other armed robbery count were, correctly, not enhanced.
The defendant now appeals, arguing that, at the second habitual offender hearing, the state failed to prove his identity beyond a reasonable doubt. For the following reasons, we affirm all the convictions and the sentences for the aggravated burglary count and the second armed robbery count, vacate the habitual offender adjudication and the enhanced sentence, as to the first armed robbery count, and remand with instructions.

FACTS[1]
On or about January 15, 2001, at approximately 7:30 p.m., the defendant and three other assailants knocked on the door of a townhouse located on Kennesaw Drive in Baton Rouge, Louisiana. Gretchen Fontenot, one of the residents of the townhouse, opened the door and observed all four assailants as they stood at the doorway armed with firearms. As Fontenot attempted to close the door, the assailants forced their entry into the home and pushed Fontenot to the living room floor.
At the time of the forced entry, Hansel Temple, the other resident of the townhouse, was in the kitchen. Temple unsuccessfully attempted to jump out of the kitchen window when the defendant put his assault rifle up to Temple's head. The assailants pulled Temple into the living room of the home. During her testimony, Fontenot stated that she screamed several times and added, "they told me if I didn't shut up they were going to kill me." The assailants made several demands for items, such as drugs and money, and used duct tape to tie up the victims. Fontenot and Temple testified that they did not have any drugs in their home, but that the assailants exited the home after collecting money, jewelry, clothing, and other items.
On the preceding night, the same four assailants, including the defendant, had knocked on the door of the same residence. On that occasion, the victims had not opened the door. After Fontenot had raised a window, the assailants indicated that they were looking for an individual named Chad and a party. The victims had informed them that they did not know anyone named Chad and were not having a party. The assailants then left. According to the statement given to the East Baton Rouge Parish Sheriffs Office by the defendant, the assailants had intended to commit the offenses on that night but delayed doing so.

ASSIGNMENT OF ERROR
In his sole assignment of error, the defendant argues the trial court erred in adjudicating him a second felony habitual offender. Specifically, the defendant contends that the state did not meet its burden of proof regarding his identity, and the trial court erred in failing to provide written reasons for its adjudication.
We find merit with the issue regarding the state's failure to prove the defendant's identity.[2] Accordingly, we vacate both the instant habitual offender adjudication and the enhanced sentence and remand with instructions.
In order to obtain a multiple offender conviction, the state is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. In attempting to do so, the state may present: (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical driver's license number, sex, race, and date of birth. State v. Payton, 00-2899 (La. 3/15/02), 810 So.2d 1127, 1130.
According to the transcript of the habitual offender hearing on January 25, 2007, Katherine Williams, an expert in fingerprint comparison, fingerprinted the defendant in open court. A fingerprint card was made of the defendant's right thumb and right index finger. The card was marked as State's Exhibit Number 2 and introduced into evidence. However, the habitual offender exhibits before this court do not contain a fingerprint card of the defendant from that date. The "S-2" exhibit before this court is a certified copy of a Louisiana State Police record with a fingerprint card from April 25, 1994, for simple robbery and simple burglary committed by "Joseph Wayne Neathery." According to the transcript, a certified copy of that same exhibit was identified at the January 25, 2007 hearing and marked as State's Exhibit Number 1 before being introduced into evidence without objection by the defendant. However, the "S-1" exhibit before this court is a certified copy of a Louisiana State Police record containing a fingerprint card from 1993 for second degree battery. Exhibits "S-1" and "S-2" in the appellate record are the only exhibits that contain fingerprints.[3] The other four exhibits before this court relevant to the habitual offender hearing are "S-3" and "S-4," certified copies of the bills of information for simple burglary and simple robbery, respectively, and the minutes of the proceedings for the defendant's guilty pleas and sentences; "S-5," a copy of the bill of information for the defendant's present charges; and "5-6," a certified copy of the minutes of the defendant's sentencing hearing on April 2, 2003, for his present convictions.[4]
After the exhibits identified as "S-1" and "S-2" were admitted into evidence at the January 25, 2007 habitual offender hearing, the state asked Ms. Williams to compare the fingerprints on "S-1" and "S-2." Ms. Williams compared the prints and determined that they belonged to the same individual. When asked by the state if she was certain that the person in the courtroom whom she fingerprinted was the same Joseph Neathery that was fingerprinted on "S-1," Ms. Williams responded in the affirmative.
Thus, while the transcript of this hearing would seem to suggest that Ms. Williams compared the fingerprints of the defendant taken by her in court and marked as Exhibit "S-2" with the fingerprints taken for the defendant's simple robbery and simple burglary convictions and marked as Exhibit "S-1," the only fingerprint exhibits before us suggest that the 1993 fingerprints for a second degree battery conviction (Exhibit "S-1" in the appellate record) were compared with the 1994 fingerprints for simple robbery and simple burglary convictions (Exhibit "S-2" in the appellate record). In other words, we do not have before us any fingerprint card of the defendant made by Ms. Williams at the January 25, 2007 habitual offender hearing, as the transcript would suggest. Accordingly, the appellate record does not contain competent evidence to support proof of the defendant's identity and that he was the same person convicted of the prior felony offenses, namely, simple robbery and simple burglary.[5] Therefore, the habitual offender adjudication and the enhanced sentence are vacated.
Pursuant to the directive from our original opinion for the state to dismiss one of the aggravated burglary counts, the state dismissed count two of the bill of information, leaving only the remaining two counts of armed robbery, in addition to the remaining count of aggravated burglary. At the January 25, 2007 habitual offender hearing, the trial court and the state agreed that the defendant's enhanced sentence would be for "count two, the armed robbery." It is obvious that the court and the state were referring to the next count in the sequencing order, even though technically the first count of armed robbery had been designated as count three in the bill of information. Moreover, the original habitual offender bill of information indicates that the sentence to be enhanced was for the "count 3, armed robbery" conviction. Therefore, on remand, the state should clarify the designation of the remaining armed robbery count it is seeking to enhance. If the defendant is again adjudicated a habitual offender, the trial court shall give written reasons with respect to the enhanced sentence it imposes. See LSA-R.S. 15:529.1(D)(3).
For the foregoing reasons, we vacate the habitual offender adjudication and the enhanced sentence, and we remand with instructions. We affirm all three of the convictions and the sentences for the aggravated burglary count and the second armed robbery count.
CONVICTIONS AFFIRMED; AGGRAVATED BURGLARY SENTENCE AND SECOND COUNT OF ARMED ROBBERY SENTENCE AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND ENHANCED SENTENCE VACATED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] The facts are taken from our original opinion. See Neathery, 05-0026 at 3.
[2] While the issue is not before us since the matter is being remanded, we note that any failure by the trial court to provide written reasons for this habitual offender adjudication constituted harmless error. See State v. Smith, 00-0423 (La. App. 1st Cir. 11/3/00), 769 So.2d 1280, 1285, writ denied, 01-0993 (La. 12/14/01), 804 So.2d 630.
[3] The copies of the fingerprints on the "S-1" and "S-2" exhibits were certified by Cynthia S. Kilcrease, the fingerprint expert who testified at the first habitual offender hearing on February 11, 2004. It is clear from the instant habitual offender hearing transcript that what the state identified and introduced as "State's Exhibit 1" is actually the "S-2" exhibit before us. The "S-1" exhibit before us is a Louisiana State Police record with a fingerprint card from February 20, 1993, for second degree battery committed by "Joseph Wayne Neathery." In its habitual offender bill of information, the state sought to use the predicate of a guilty plea by the defendant on November 22, 1993, to simple robbery and simple burglary to establish the defendant as a second felony habitual offender. As such, the second degree battery conviction has no bearing on the defendant's habitual offender adjudication, and the purpose for the "1" exhibit being made a part of the record at the January 25, 2007 habitual offender hearing is unclear.
[4] The state did not introduce Exhibit "S-6" at the January 25, 2007 hearing. After introducing "S-5," the state rested. At the first habitual offender hearing on February 11, 2004, the state introduced Exhibits "S-1" through "S-6." It is clear that the exhibits before this court ("S-1" through "S-6") are the same exhibits that were introduced at the February 11, 2004 hearing.
[5] We are aware that the Habitual Offender Act does not require the state to use a specific type of evidence, including fingerprints, to carry its burden at a habitual offender hearing and that prior convictions may be proved by any competent evidence. See Payton, 810 So.2d at 1132. However, at the January 25, 2007 habitual offender hearing, the state's method of proof was by fingerprint identification and matching. There was no attempt to compare, for example, similar driver's license numbers, social security numbers, or dates of birth. No photographs were introduced into evidence and no other witness, other than Ms. Williams, testified at the instant habitual offender hearing. See State v. Curtis, 338 So.2d 662 (La. 1976). In any event, our review of the record reveals that the dates of birth and names match on several of the records. However, only the Louisiana State Police record of the simple robbery and simple burglary convictions contains a social security number. As such, a social security number match cannot be made with other records. Also, the "S-2" exhibit in the appellate record lists, presumably, the defendant's driver's license number as 5689532, whereas the present bill of information lists the defendant's driver's license number as 5863961.